2018 UT App 28

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JONATHAN DENARD SMITH,
Appellant.

Opinion
No. 20151033-CA
Filed February 15, 2018

Third District Court, Salt Lake Department
The Honorable James T. Blanch
No. 151900912

Amy N. Fowler, Attorney for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
GREGORY K. ORME and DIANA HAGEN concurred.

POHLMAN, Judge:

¶1      Jonathan Denard Smith appeals the sentences resulting
from his guilty pleas for one count of damage to jail property, a
third degree felony, and one count of attempted damage to jail
property, a class A misdemeanor. He was sentenced on these
two offenses without his counsel present because the district
court determined that, for purposes of sentencing, Smith had
voluntarily and knowingly waived his right to counsel. Smith
argues that the court erred in that determination. We agree and
therefore vacate Smith's sentences and remand for further
proceedings.

BACKGROUND

¶2 While Smith was in custody, two charges relevant to this appeal were filed against him—one for propelling a substance at an officer in January 2015, a class A misdemeanor (Case One), and one for damaging jail property in April 2015, a third degree felony (Case Two) (collectively, the Cases). After an attorney from Salt Lake Legal Defender Association (LDA) withdrew on the basis of a conflict, a second attorney was appointed as Smith's attorney for the Cases.

¶3 The second attorney negotiated a plea deal in which Smith would plead guilty as charged on Case Two, and the charge underlying Case One would be amended to attempted damage to jail property, a class A misdemeanor. In exchange, the State promised to dismiss another charge that it had filed against Smith and agreed to release him from custody. Smith pleaded as negotiated, and during the May 2015 plea hearing, the court accepted his plea and ordered his pre-trial release.

¶4 Smith was rearrested and placed in custody on other charges in mid-August 2015.[1] Another LDA attorney—Smith's third—was appointed to represent him on the new charges, but that attorney also withdrew. In late September 2015, the court arranged for conflict counsel (Attorney) to be appointed on all of Smith's cases.

¶5 In late October 2015, Smith, through Attorney, moved to withdraw his guilty pleas in the Cases, and the court set the matter for a hearing on November 10, 2015. The court noted that,

---

1. The charges that led to Smith's initial custody before the Cases, and the charges filed subsequent to those cases, are not the subject of this appeal. We refer to them only for clarity in the narrative.

in the event Smith's motion to withdraw his pleas was denied, "sentencing may be addressed" at the November hearing.

¶6     One week before the November hearing, Attorney sought to withdraw as Smith's appointed counsel on the ground that a conflict existed. Attorney asserted that during a visit to Smith at the correctional facility, Smith became "hostile and argumentative" and threatened him with physical harm. On November 5, 2015, the court granted Attorney's motion to withdraw and ordered LDA to appoint new conflict counsel. However, as of the November 10, 2015 hearing, LDA had yet to assign new counsel, and no counsel appeared on Smith's behalf. Nonetheless, the hearing proceeded.

¶7     The court began the hearing by explaining that, although five total cases were pending against Smith, the hearing's primary purpose was to address Smith's motion to withdraw his pleas in the Cases and, depending on the outcome of that motion, to potentially sentence him for those cases. After the court stated for the record that Attorney had withdrawn and that it had ordered LDA to appoint new counsel for Smith, the State requested that the court determine that Smith had forfeited his right to counsel for the Cases. According to the State, Smith had fired "every attorney who gives him advice he doesn't like, culminating [in] threatening physical violence against [Attorney]." In the alternative, the State requested at minimum that the court warn Smith "of the dangers of representing himself and of the behaviors that are inappropriate in interacting with future counsel" so that if Smith "continue[d] in this line of behavior, he will recognize that he is by his actions waiving his right to have an attorney going forward."

¶8     The court did not determine that Smith had forfeited his right to counsel for the Cases. Instead, the court outlined for the record Smith's history with counsel across the "various cases" pending against him and then attempted to have a discussion

with Smith regarding his understanding about what it would mean to represent himself. The court took a comprehensive approach. It explained to Smith that if he were sentenced to the maximum punishment for all the charges filed against him in all of his five pending cases, he could be "potentially ordered to serve 162 years in prison" and "face tens of thousands of dollars in monetary penalties."

¶9     The court also attempted to ask Smith questions relevant to his understanding of the risks associated with generally representing himself in all of his cases. For example, the court asked Smith about his legal knowledge, whether he had ever represented himself in a criminal proceeding, whether he realized he would not receive any help "in terms of how the cases would be tried," whether he understood that he would be expected to follow the rules of procedure, and whether he understood the difficulties inherent in representing himself in front of a jury. Smith refused to provide responsive answers to these questions, and, in large part, remained silent; indeed, the court stated for the record, "Whether you understand it or not, you are refusing to answer my question," and thereafter noted each instance Smith refused to answer. In conclusion, the court advised Smith to "be represented by an attorney," stating that it "strongly urge[d] [Smith] to accept representation from the next lawyer who's going to be appointed to represent" him.

¶10     At the conclusion of the court's attempted colloquy with Smith, the State again asked the court to warn Smith "about what behaviors are inappropriate and would result in a waiver of his right to counsel." The court began to do so, explaining to Smith that he had gone through "four excellent lawyers" by interfering with their ability to represent him, but Smith interrupted the court and proposed,

> All right. Since today is sentencing on the other
> two cases, how about this? I don't need no lawyer

for that. Sentence me. Send me to the Utah State Prison. Let me get comfortable. And I'll fight those cases from there. Do you agree? That way I don't have to deal with getting no more charges or no more none of that. I can do my time the way I do my time and you ain't got to worry about that.

¶11   In response, the district court attempted to verify that Smith indeed wished to represent himself for sentencing purposes in the Cases; the court asked Smith several times whether he wanted to be sentenced that day, whether he wanted to represent himself for sentencing in the Cases, and whether he had "heard everything" the court told him about representing himself. Each time, Smith demanded that the court sentence him.

¶12   The court ultimately denied Smith's motion to withdraw his pleas, found that Smith had chosen to represent himself and to be sentenced in the Cases, and then proceeded to sentencing. The court asked the State for its input, and the State recommended that Smith be committed to prison, noting that while the sentencing "matrix would not usually recommend prison[,] . . . [Smith's] behavior precludes an option of probation." The court then asked Smith if he had "anything else [he] want[ed] to say," and Smith responded, "No, I don't."

¶13   The court sentenced Smith to prison for zero to one year for Case One, and zero to five years for Case Two. It ordered the sentences to run consecutively and recommended that Smith not receive credit for time served. Smith appeals.

ISSUES AND STANDARDS OF REVIEW

¶14   Smith argues that the district court erred by concluding that he voluntarily, knowingly, and intelligently waived his right to counsel. Whether Smith "voluntarily, knowingly, and intelligently waived his right to counsel is a mixed question of

law and fact." *State v. Pedockie*, 2006 UT 28, ¶ 23, 137 P.3d 716. We will review the court's conclusions of law for correctness and will reverse the court's factual findings only if they are clearly erroneous. *Id.*

¶15 Smith also argues that the district court abused its discretion by sentencing him to prison instead of probation. While we ordinarily review sentencing decisions for abuse of discretion, *see State v. Karren*, 2017 UT App 163, ¶ 2, 405 P.3d 825 (per curiam), we do not reach Smith's arguments regarding the propriety of his sentences here because we vacate those sentences on other grounds as explained below.

ANALYSIS

I. The Law of Waiver

¶16 Smith challenges the court's determination that he waived his right to counsel for purposes of sentencing in the Cases. "Under both the United States and Utah Constitutions, a criminal defendant has the right to assistance of counsel," *State v. Hall*, 2013 UT App 4, ¶ 25, 294 P.3d 632, which includes the right to effective counsel for sentencing proceedings, *State v. Casarez*, 656 P.2d 1005, 1007 (Utah 1982). "Concomitant with that right is the criminal defendant's guaranteed right to elect to present his own defense." *State v. Hassan*, 2004 UT 99, ¶ 21, 108 P.3d 695; *see also State v. Pedockie*, 2006 UT 28, ¶ 26, 137 P.3d 716 ("Defendants also have the right to waive their right to counsel."). Because the right to counsel and the right to waive counsel are mutually exclusive, "a trial court must be vigilant to assure that the choice [to waive counsel] is freely and expressly made 'with eyes open.'" *State v. Bakalov*, 1999 UT 45, ¶ 15, 979 P.2d 799 (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)). "Before permitting a defendant to [waive the right to counsel], . . . a trial court should ensure that the waiver is voluntary, knowing, and intelligent." *Pedockie*, 2006 UT 28, ¶ 26. If there are any doubts

regarding the defendant's understanding of the consequences of waiver, those doubts "must be resolved in favor of the defendant." *Id.* ¶ 45.

¶17 There are three methods through which a defendant may validly waive his right to counsel—true waiver, implied waiver, and forfeiture. *See id.* ¶ 27. Here, the dispute centers on true waiver. Smith contends that he did not provide a true waiver of counsel for sentencing in the Cases, while the State contends that he did.

¶18 A true waiver is one in which the defendant affirmatively represents that he wishes to proceed without counsel. *Id.* ¶ 28. First, for such waiver to be valid, the district court "must be assured that a defendant has clearly and unequivocally requested the right to proceed pro se." *Hassan*, 2004 UT 99, ¶ 22 (brackets, citation, and internal quotation marks omitted); *see also Bakalov*, 1999 UT 45, ¶ 16 (stating that "[t]o invoke the right of self-representation, a defendant must in a timely manner 'clearly and unequivocally' request it" (quoting *United States v. McKinley*, 58 F.3d 1475, 1480 (10th Cir. 1995))).

¶19 Second, the court must be assured that the defendant's choice is knowingly and intelligently made, meaning that the defendant has "actual awareness of the risks of proceeding pro se" under the particular facts and circumstances at hand. *See Hassan*, 2004 UT 99, ¶ 22 (citation and internal quotation marks omitted); *see also State v. Frampton*, 737 P.2d 183, 188 (Utah 1987) (stating that, for the waiver to be knowing and intelligently made, a defendant must understand "the relative advantages and disadvantages of self-representation in a particular situation" (citation and internal quotation marks omitted)). Our supreme court has instructed that the "most reliable way for a trial court to determine whether a defendant is aware of the dangers and disadvantages of self-representation is to engage in a colloquy on the record." *Pedockie*, 2006 UT 28, ¶ 29; *see also*

*Frampton*, 737 P.2d at 187 (explaining that determining whether a defendant's waiver is knowing and intelligent can generally "only be elicited after penetrating questioning by the trial court" and that "a colloquy on the record between the court and the accused is the preferred method of ascertaining the validity of a waiver"). For example, in *Frampton*, the court set out a sixteen-point inquiry to assist and guide courts in their determinations of whether a defendant's waiver is knowing and intelligent, *see* 737 P.2d at 187 n.12, and since then it has encouraged district courts to conduct an inquiry based on the *Frampton* factors, *see, e.g., Pedockie*, 2006 UT 28, ¶¶ 42, 45; *Bakalov,* 1999 UT 45, ¶¶ 23–25.

¶20    Nonetheless, "the validity of a waiver [does not] turn . . . on whether the trial judge actually conducted the colloquy, but rather 'upon the particular facts and circumstances surrounding each case.'" *Hassan*, 2004 UT 99, ¶ 22 (quoting *Frampton*, 737 P.2d at 188); *see also id.* ("Beyond the colloquy, we will look at any evidence in the record which shows a defendant's actual awareness of the risks of proceeding pro se." (citation and internal quotation marks omitted)); *State v. Drobel*, 815 P.2d 724, 733 (Utah Ct. App. 1991) (explaining that "the *Frampton* colloquy alone cannot form the basis for granting a self-representation request when other information available to the trial court suggests that the request may not be knowingly and intelligently made"). Ultimately, the crucial determination that must be made is "whether the defendant understood the consequences of waiver," regardless of whether a district court conducts the colloquy. *See Pedockie*, 2006 UT 28, ¶ 45. *But see id.* (anticipating "that reviewing courts will rarely find a valid waiver of the right to counsel absent a colloquy" conducted by the district court).

## II. The Arguments on Appeal

¶21    Smith contends that he did not provide a true waiver for two reasons. First, he asserts that he "did not make an unequivocal request to represent himself." Second, he asserts

that any alleged waiver was not "knowingly and intelligently" made.

¶22 First, we disagree with Smith's assertion that he did not unequivocally request to represent himself for sentencing purposes in the Cases. Smith exhibited awareness that he stood to be potentially sentenced that day for the Cases and that, though no counsel was present to represent him, he had the right to be represented for the sentencing. Indeed, Smith himself proposed to forgo counsel for sentencing in the Cases, requesting instead that the district court sentence him that day. Thereafter, Smith repeatedly demanded to be sentenced in response to the court's admonition that he wait for counsel and its multiple inquiries regarding whether he wanted to be sentenced that day, whether he wanted to represent himself for sentencing in the Cases, and whether he had heard "everything" the court told him about representing himself. Smith's repeated demands in response to the court's questions left little room for interpretation about his desire to be sentenced at the hearing without the benefit of counsel. *See generally State v. Bakalov*, 1999 UT 45, ¶ 16, 979 P.2d 799 (explaining that the request for self-representation must be clear and unequivocal, and describing what is to be guarded against by requiring that the request for self-representation be explicit).

¶23 Nevertheless, although we conclude that Smith's waiver was voluntary, we cannot conclude that it was knowing and intelligent. In particular, the record leaves us with doubts about whether Smith understood the risks he faced proceeding pro se for sentencing, and given "the strong presumption against waiver and the fundamental nature of the right to counsel," these doubts must be resolved in Smith's favor. *See State v. Pedockie*, 2006 UT 28, ¶ 45, 137 P.3d 716.

¶24 To begin with, even though the court attempted to conduct a *Frampton* colloquy with Smith, the outcome was

unsuccessful. Smith refused to engage with the court and responsively answer the court's questions. For most of the colloquy, Smith was silent, and the court itself acknowledged that Smith's refusal to respond left uncertainty about his understanding of the risks he would face representing himself. And when Smith did respond, his answers were largely nonresponsive to the questions posed. For example, when the court asked Smith to talk about his legal knowledge, he responded that it "doesn't matter," and when the court asked whether he had ever represented himself in a criminal action, Smith asked, "What is this relevant to?" and thereafter rebuffed the court's attempts to redirect the question.

¶25 Further, and more importantly, even had Smith engaged with the court's attempted colloquy, we cannot discern from the court's interaction with him whether he understood the risks he undertook in choosing to represent himself at sentencing for the Cases. There is no evidence that Smith was informed of the risks associated with representing himself for sentencing purposes. The court did not ask questions aimed specifically toward determining Smith's understanding of what it would mean to waive counsel for sentencing in the Cases. *See State v. Frampton*, 737 P.2d 183, 188 (Utah 1987) (explaining that a defendant must understand "the relative advantages and disadvantages of self-representation *in a particular situation*" (emphasis added) (citation and internal quotation marks omitted)); *see also State v. Hassan*, 2004 UT 99, ¶ 22, 108 P.3d 695 (emphasizing that the "validity of a waiver would turn not on whether the trial judge actually conducted the colloquy," but whether "the particular facts and circumstances surrounding [the] case" demonstrated "a defendant's actual awareness of the risks of proceeding pro se" (citations and internal quotation marks omitted)); *cf. State v. Cabrera*, 2007 UT App 194, ¶ 11, 163 P.3d 707 (stating that sentencing is considered a "critical stage of criminal proceedings at which a defendant is entitled to the effective assistance of counsel" (citation and internal quotation marks omitted)).

Instead, the court's attempted colloquy comprehensively addressed all five of the cases then pending against Smith. For example, the court informed Smith that he was facing twenty-four charges of varying degree across those five cases, and it explained to him that if he received the maximum punishment for each, he could potentially be ordered "to serve 162 years in prison" and could face "tens of thousands of dollars in monetary penalties." The court also asked several questions related to what it would mean for Smith to defend himself at trial in his cases—questions obviously aimed at the pending charges to which he had not yet pleaded guilty rather than questions relevant to self-representation at his sentencing in the Cases.

¶26 Moreover, the record does not resolve the doubts regarding Smith's understanding about the consequences of waiving his right to counsel at sentencing. *See Pedockie*, 2006 UT 28, ¶¶ 42, 45. There is no evidence in the record suggesting that Smith otherwise understood the value imparted by representation during sentencing or what he would risk by proceeding without it. *See generally Cabrera*, 2007 UT App 194, ¶¶ 11, 18. Smith told the court that he did not need a lawyer for sentencing, repeatedly demanded to be sentenced at the hearing, and seemed to appreciate both that he was proceeding pro se only as to sentencing in the Cases and that he faced a potential prison sentence. But his various statements suggest that he simply presumed he was going to be sentenced to prison and that an attorney would therefore be of no help to him. Similarly, there is no evidence from which we could conclude that Smith understood the various matters germane to a sentencing proceeding, such as whether certain evidence militated against imposing the maximum available penalty for the convictions. *See generally State v. Johnston*, 2009 UT App 136, ¶ 13, 210 P.3d 973 ("Assistance of counsel at sentencing is necessary so that there is a real opportunity to present evidence of mitigating circumstances."). Indeed, this lack of comprehension is evident in Smith's response to the court's question of whether he had

"anything else [he] want[ed] to say" before the court pronounced the sentences. Rather than offer the court mitigating evidence in response to the State's argument that probation would not be appropriate, for example, *see generally id.*, Smith tersely told the court that he did not have anything more to add.

¶27    For these reasons, we cannot conclude that Smith's waiver of counsel for sentencing in the Cases was knowingly and intelligently made. We therefore vacate Smith's sentences and remand for resentencing.[2]

CONCLUSION

¶28    We conclude that, although Smith clearly expressed a desire to be sentenced without the benefit of counsel, his waiver

---

2. At oral argument before this court, Smith contended that it was error as a threshold matter for the district court to proceed with the November 2015 hearing given that Smith, although waiting for the appointment of new counsel, was still a represented party. Smith argued that the court should not have engaged with him and instead should have continued the proceeding until after new counsel was appointed. Because this issue was not briefed, we do not address it on its merits. *See State v. Ojeda*, 2015 UT App 124, ¶ 11 n.5, 350 P.3d 640 ("We will not reverse based on an unbriefed argument raised for the first time at oral argument." (citation and internal quotation marks omitted)). Nevertheless, we are troubled that the State invited the court to address—and that the court did ultimately address—substantive issues with Smith without counsel being present and before Smith had suggested that he wanted to proceed pro se. At the very least, the better course of action would have been to continue the hearing until the assigned attorney had entered his or her appearance and was prepared to proceed.

was not sufficiently knowing and intelligent to be valid. We vacate Smith's sentences and remand for further proceedings consistent with this opinion.

¶29 Further, because we are vacating his sentences and remanding this case, we have no occasion to address Smith's argument that the court exceeded its discretion in sentencing Smith to prison rather than placing him on probation.

———————