**2023 UT App 61**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DEBORAH JEAN WEST,
Appellant.

Opinion
No. 20210335-CA
Filed June 2, 2023

Fifth District Court, St. George Department
The Honorable Jeffrey C. Wilcox
The Honorable John J. Walton
No. 191500815

Nicolas D. Turner, Attorney for Appellant

Eric Clarke and James R. Weeks,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and RYAN D. TENNEY
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Deborah Jean West appeals from a jury's determination that she violated a civil stalking injunction, challenging her conviction and the sentencing court's sentence on several grounds. West asserts that the trial court erred in denying her pretrial motions to exclude certain evidence and to continue the trial. West also argues that her pro se post-trial motions to dismiss were denied in error. Finally, West argues that her constitutional right to be represented by counsel was violated when the court sentenced her without first determining whether her decision to represent herself was made knowingly and intelligently.

¶2     We uphold the trial court's denial of the motion to exclude evidence and the motion to continue and therefore affirm West's conviction. However, because the sentencing court did not ensure that West's waiver of counsel was done knowingly, we vacate West's sentence and remand for further proceedings. Because of our resolution of those issues, we do not reach the merits of West's argument regarding her post-trial motions.

BACKGROUND

*The Pretrial Motions and Trial*

¶3     In May 2019, West was charged with violating a stalking injunction. The stalking injunction included the restriction that West was not to come within twenty feet of C.L. (Petitioner). The charge against West derived from an encounter between Petitioner and West that occurred in their housing community's clubhouse library. At trial, the State bore the burden to prove that West intentionally or knowingly violated the stalking injunction. *See* Utah Code § 76-5-106.5(2)(b).

¶4     After being notified by the State that it intended to introduce evidence that West had allegedly violated the injunction on two other occasions after charges were filed, West filed a motion in limine the day before trial to preclude the admission of that evidence. The court addressed this motion on the first day of trial. West argued that the evidence should be excluded because it was improper character evidence, lacked any relevance, and posed a danger of unfair prejudice. The State argued that the evidence of West's other alleged violations of the injunction should be admitted and presented to the jury to show West's intent, knowledge, or lack of mistake, which the State argued was relevant to proving the intent element of the charged crime. *See* Utah R. Evid. 404(b) (stating that evidence of a crime, wrong, or other act is not admissible to prove propensity, but may be admissible to prove "motive, opportunity, intent, preparation,

plan, knowledge, identity, absence of mistake, or lack of accident").

¶5 When the trial court indicated its intention to admit the evidence, West's counsel requested a continuance of the trial, arguing that as the State's disclosure of the evidence was made only fifteen days before trial, he was precluded from appropriately preparing for the evidence, such as giving potential witnesses the proper notice to appear to testify. West's counsel further contended that based on the sparse information regarding the State's evidence, he would not have known whom to subpoena. The trial court ultimately denied the motion to continue, stating, "We have a jury here, a jury panel. I want the case tried," indicating that it might "revisit the issue again" as the evidence was admitted.

¶6 During trial, the evidence presented showed that Petitioner was present at the clubhouse library, West entered the library, a brief verbal interaction occurred between the two, Petitioner called the police, and West left the library.

¶7 Petitioner testified that when she saw West was about to enter the library, she said, "Please don't come in now. There is a 20-feet rule. You need to stay away from me 20-feet. . . . Or I'm going to have to call the police." Despite this warning, West continued to enter the library and responded by saying something to the effect that she did not care and to "go ahead." She then proceeded to remove her shoes, step onto a couch cushion, and hang a poster advertising a community event. Petitioner then left the clubhouse library in search of another person to witness that West had entered the clubhouse library where Petitioner had been. During Petitioner's testimony, the State also showed video surveillance of the door to the clubhouse library, showing West walking in and Petitioner walking out shortly afterward. And a police officer testified that following the incident, based upon Petitioner's report, he measured the approximate distance that would have been between Petitioner and West and concluded

that West was easily within the twenty-foot radius prohibited by the stalking injunction.

¶8   The State also presented evidence of the two other interactions between West and Petitioner—both occurring after the library incident for which West was charged and before the trial—where West was alleged to have been closer to Petitioner than the injunction's twenty-foot restriction. In the first incident, both West and Petitioner attended a community potluck, and West sat at a table within twenty feet of Petitioner. In the second incident, while attending services at their church, Petitioner was in the church foyer and West approached, put her things down near where Petitioner was standing, and then stood within the same area for an extended time.

¶9   West testified at trial and she and her counsel had the following exchange after viewing surveillance video from the clubhouse library:

> Counsel: [S]o you saw in the video [Petitioner] walks off away from the library, correct? And then the video shows you walking out some seconds later in the same direction. Is that correct?
>
> West: That is correct.
>
> Counsel: Now did you know where she had gone?
>
> West: No.
>
> Counsel: Okay. So where were you going when you walked out of there?
>
> West: I was going to the kitchen . . . . And then I went from there into the exercise room.
>
> . . . .

> Counsel: So you hung up two more posters after the
> library. And then did you leave?
>
> West: Yes . . . .

¶10 Following deliberation, the jury found West guilty of violating the stalking injunction.

*The Post-trial Motions and Sentencing*

¶11 After trial and prior to sentencing, West filed several pro se post-trial motions, claiming in each that she was no longer represented by counsel. West also aired numerous grievances, of which few are relevant here. Pertinent to this appeal, West took issue with the trial court's admission of the evidence of the other instances of alleged contact between her and Petitioner, and she repeatedly requested that her case be dismissed.

¶12 During a sentencing review hearing in December 2019, the sentencing court[1] asked West if she would "like a new lawyer," to which West responded in the negative. Without engaging in any colloquy[2] and without questioning West about her understanding

---

1. The judge who presided over West's trial and ruled on the pretrial motions was not the same judge who presided over West's sentencing hearings and denied West's pro se post-trial motions.

2. The entire exchange between the sentencing court and West consisted of the following:

> Sentencing Court: [Trial counsel] was appointed to
> represent you previously?
>
> West: He was.
>
> Sentencing Court: Would you like a new lawyer?
>
> (continued…)

of the significance and the risk of proceeding without counsel, the court accepted West's indication to proceed pro se, ordered West's trial counsel to withdraw, and allowed West to represent herself.

¶13 At her sentencing hearing approximately sixteen months later—the delay in proceedings due in small part to expected scheduling conflicts and in larger part to the COVID-19 pandemic—the court engaged in no further discussion with West about her decision to waive counsel and represent herself, other than to note that West "put [herself] at a disadvantage . . . having fired [her] lawyer," which was "pretty clear in the record, and [West] confirmed that . . . at [the sentencing review]." During this hearing, the sentencing court focused on West's post-trial motions. The sentencing court indicated on the record that West had "framed most of the written materials . . . as motions to dismiss," and noted that the motions had not "been submitted for decision, which would normally be required under the [Utah] Rules of Criminal Procedure." However, the court expressed its intention to provide immediate responses to the motions, having told West that the court "would rule on [the] motions" during the sentencing hearing. The court then proceeded to deny the portion of West's motions to dismiss dealing with the evidence of the other alleged injunction violations admitted at trial.

¶14 Next, the sentencing court addressed the other issues raised in West's motions, simply concluding that "frankly, . . . the motions that [West had] made [were] legally frivolous." The court ultimately denied all of West's motions in totality and then proceeded with sentencing. The court sentenced West to serve 364 days in jail, but it suspended the jail time, and imposed a fine. The

---

West: No. I will represent myself. I can do better representing myself.

Sentencing Court: Okay. So [trial counsel] is allowed to withdraw from the cases. And Ms. West will represent herself.

court ordered West to serve eighteen months of probation with the conditions that she complete community service, complete an anger management course, and continue to comply with the stalking injunction. West appeals.

ISSUES AND STANDARDS OF REVIEW

¶15 The first issue we address is West's challenge to the denial of her pretrial motions. She argues that the trial court erred in denying the motion in limine, contending that she was denied the right to a fair trial when the court allowed evidence of additional interactions between West and Petitioner to be admitted. We review for an abuse of discretion a trial court's decision to admit evidence under rules 404(b), 402, and 403 of the Utah Rules of Evidence. *See State v. Tarrats*, 2005 UT 50, ¶ 16, 122 P.3d 581 ("Trial courts have wide discretion in determining relevance, probative value, and prejudice. Therefore, we will not reverse the trial court's ruling on evidentiary issues unless it is manifest that the trial court so abused its discretion that there is a likelihood that injustice resulted." (quotation simplified)). In the event that the trial court admits evidence in error, "we will not disturb the outcome of a trial if the admission of the evidence did not reasonably affect the likelihood of a different verdict." *State v. Miranda*, 2017 UT App 203, ¶ 24, 407 P.3d 1033 (quotation simplified), *cert. denied*, 417 P.3d 581 (Utah 2018). And West "bears the burden of showing that [she] was harmed by the trial court's error." *See id.* ¶ 44.

¶16 West further asserts that the trial court erred in denying her request to continue the trial after the court determined the other-acts evidence was admissible. We review the court's denial of a motion for continuance for an abuse of discretion. *State v. Cabututan*, 861 P.2d 408, 413 (Utah 1993) ("The standard of review for the denial of a motion for continuance is abuse of discretion: It is well-established that the granting of a continuance is discretionary with the trial judge. Absent a clear abuse of that discretion, the decision will not be reversed by this court."

(quotation simplified)). A trial court "abuses its discretion when it denies a continuance and the resulting prejudice affects the substantial rights of the defendant, such that a review of the record persuades the court that without the error there was a reasonable likelihood of a more favorable result for the defendant." *Mackin v. State*, 2016 UT 47, ¶ 33, 387 P.3d 986 (quotation simplified).

¶17   Next, we address West's argument that her constitutional right to be represented by counsel at sentencing was violated because the sentencing court did not adequately explore through an on-the-record colloquy whether her waiver of counsel was knowingly and intelligently made with an understanding of the risks of representing herself. In the absence of a colloquy, we review the record de novo to determine whether the defendant knowingly and intelligently waived her right to counsel. *See State v. Pedockie*, 2006 UT 28, ¶ 45, 137 P.3d 716 ("De novo review is appropriate because the validity of a waiver does not turn upon whether the trial judge actually conducted the colloquy, but upon whether the defendant understood the consequences of waiver." (quotation simplified)). "Whether [West's] waiver was knowing and intelligent involves a mixed question of law and fact which we review for correctness, but with a reasonable measure of discretion given to the [trial] court's application of the facts to the law." *State v. Bozarth*, 2021 UT App 117, ¶ 21, 501 P.3d 116 (quotation simplified).[3]

---

3. West also argues on appeal that the sentencing court erred in (1) interpreting West's pro se post-trial motions as motions to dismiss instead of considering them as motions for a new trial and (2) denying those motions. However, given our determination that West did not knowingly and intelligently waive her constitutional right to counsel at sentencing, which requires vacating the sentence and remanding for further proceedings, we need not reach West's final argument here. Remand for re-sentencing will allow West to refile her motions for consideration, with the assistance of counsel if she so chooses.

ANALYSIS

I. Pretrial Motions

¶18 West first challenges the trial court's denials of her motion to exclude evidence and motion to continue the trial. We do not reach the merits of West's argument that the trial court erroneously admitted the other-acts evidence or abused its discretion in denying her continuance motion because even if the trial court erred, West has failed to meet her burden to show that she was prejudiced by either alleged error such that our confidence in the jury's verdict is undermined. *See State v. High*, 2012 UT App 180, ¶ 41, 282 P.3d 1046 ("We will not disturb the jury's verdict unless the likelihood of a different outcome is sufficiently high to undermine confidence in the verdict." (quotation simplified)). In other words, West has not persuaded us that a "reasonable likelihood exists that the [alleged] error affected the outcome of the proceedings." *State v. Bilek*, 2018 UT App 208, ¶ 35, 437 P.3d 544 (quotation simplified), *cert. denied*, 440 P.3d 693 (Utah 2019). "A reasonable likelihood requires a probability sufficient to undermine confidence in the outcome." *State v. Gallegos*, 2020 UT App 162, ¶ 62, 479 P.3d 631 (quotation simplified), *cert. denied*, 496 P.3d 717 (Utah 2021).

A.     Motion to Exclude Rule 404(b) Evidence

¶19 West contends on appeal that evidence of other uncharged alleged violations of the stalking injunction admitted at trial was "precisely what [rule] 404(b) was intended to bar."[4] West further

---

4. West highlights in her brief the fact that these events occurred *after* the incident for which she is charged but does not further expound on any potential significance of this. Even so, we reiterate that timing of other acts in relation to the incident for which a defendant is charged is not a precluding factor to the admission of evidence of those acts: "Rule 404(b) itself . . . makes no reference to 'prior' crimes, wrongs, or acts, but refers only to

(continued…)

argues that had the jury not heard the evidence of these other alleged violations, "there was a reasonable likelihood that West would not have been found guilty of the charge." Rule 404(b) of the Utah Rules of Evidence provides that other-acts evidence, while prohibited to "prove a person's character in order to show that on a particular occasion the person acted in conformity with the character," may be admissible for other purposes, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Utah R. Evid. 404(b). Such evidence must also pass the muster of rules 402 and 403, which require that evidence be relevant and have probative value that is not substantially outweighed by a danger of unfair prejudice. *See id.* R. 402, 403.

¶20 However, we need not address the underlying question of whether the trial court erred in admitting the other-acts evidence because, "even if the admission of rule 404(b) evidence by the [trial] court was in error, reversal on appeal is not appropriate unless the defendant demonstrates that the error materially affected the fairness or outcome of the trial." *Bilek*, 2018 UT App 208, ¶ 35 (quotation simplified). Thus, the burden rests on West to make such a showing, and she fails to carry her burden here. In arguing that she was prejudiced, West simply asserts that, "[a]bsent the 404(b) evidence, there was a reasonable likelihood that West would not have been found guilty of the charge herein." But she does not then provide much discussion as to how the outcome of the trial would have differed absent the admitted other-acts evidence, other than to essentially conclude that because it was, therefore it is so. That is, West has failed to demonstrate how excluding evidence that she was close to Petitioner at church and at a potluck, after the events in the clubhouse library, would have changed the jury's determination that West knowingly and intentionally came within twenty feet of

'other' crimes, wrongs, or acts." *State v. Barney*, 2018 UT App 159, ¶ 16 n.2, 436 P.3d 231. "Many courts have recognized that other crimes, wrongs, or acts can be relevant, even if those acts occurred after the charged conduct." *Id.* (collecting cases).

Petitioner while in the clubhouse library in violation of the injunction.

¶21 To be sure, the evidence of the other acts was most likely helpful to the State in proving its case. Absent the evidence, the State would have had to rely solely on Petitioner's credibility in the eyes of the jury and her testimony of what occurred between West and her to support its case that West had knowingly and intentionally violated the stalking injunction. *See* Utah Code § 76-5-106.5(2)(b). But even without the other-acts evidence, evidence and testimony presented to the jury during trial sufficiently supports our confidence in the jury's verdict. *See State v. Ferguson*, 2011 UT App 77, ¶ 20, 250 P.3d 89 (acknowledging that while erroneously admitted evidence had "the potential of being highly prejudicial, the other evidence presented at trial was sufficiently strong as to convince us that there was no reasonable likelihood of a different result" (quotation simplified)), *cert. denied*, 262 P.3d 1187 (Utah 2011); *High*, 2012 UT App 180, ¶¶ 50–51, 54 (noting that while the case was not like *Ferguson*, "where the evidence of guilt was overwhelming" in the absence of evidence allegedly admitted in error, the court's "confidence in the jury's verdict" was not undermined as "the jury would still have heard unchallenged and properly admitted" evidence supporting the defendant's guilt).

¶22 For example, here the jury heard generally unchallenged testimony from Petitioner about the nature of her encounter with West: that she told West to stop and not enter until she was finished or she would have to call the police, and that West ignored her entreaty and threat and carried on with her business in the clubhouse library. The jury then heard West testify as to her actions following the encounter with Petitioner. Even by her own account, West did not immediately leave after the incident, but instead made her way through the clubhouse facilities without much concern about whether Petitioner was still in the area or not. The jury was also aware, by nature of the charge against West, that a stalking injunction was in place, and it could have reasonably inferred that West had a history of unwanted

interactions with Petitioner that would warrant the imposition of the stalking injunction, and that the reported clubhouse library incident was not just a solitary incident. And West has not argued how all of this, standing alone and absent the added gloss of the rule 404(b) evidence, would have induced the jury to find in her favor instead.

¶23　Accordingly, we are not persuaded that exclusion of the other two alleged incidents would so tilt the jury's view of West's credibility as to change its verdict. In other words, West has failed to persuade us that even without the admission of the other alleged violations of the stalking injunction, the result of the trial would have been favorable for her.

### B.　Motion to Continue

¶24　West also contends the court's denial of her motion to continue to address the other violations evidence "deprived [her] of her right to a fair trial." A defendant bears the burden of showing that the trial court's denial of the motion to continue was "an unreasonable action that prejudiced the party." *State v. Cornejo*, 2006 UT App 215, ¶ 14, 138 P.3d 97 (quotation simplified). "Such prejudice exists when our review of the record persuades us that had the trial court not denied the continuance request there would have been a reasonable likelihood of a more favorable result for the moving party." *Id*. (quotation simplified). West again fails to persuade us that the denial of the continuance was prejudicial.

¶25　West has not outlined on appeal how her defense strategy would have changed had she been given more time to prepare. And though she indicates in her brief and told the sentencing court judge that she had witnesses to one of the incidents, she has neither provided even the slightest information on who those witnesses may be nor provided an explanation as to whether they would have been available to testify within an appropriate time frame. Moreover, West does not flesh out on appeal why the State's information was so lacking that she could not subpoena

witnesses prior to trial. *See id.* ¶ 15 ("When a party to a criminal action moves for a continuance in order to procure the testimony of an absent witness, the party must demonstrate that: (1) the testimony sought is material and admissible, (2) the witness could actually be produced, (3) the witness could be produced within a reasonable time, and (4) due diligence had been exercised before the request for a continuance." (quotation simplified) (quoting *State v. Creviston*, 646 P.2d 750, 752 (Utah 1982))). West contends only that once the trial court allowed the other-acts evidence to be introduced, "had the continuance been afforded as it should have been, counsel would have had time to gather evidence, find witnesses, and raise a defense against that other evidence." This simply is not a sufficient showing on appeal to persuade us that the denial of her motion to continue affected the outcome of the trial. Therefore, her claim fails here as well.

## II. Knowing and Intelligent Waiver

¶26 The next question before us is whether West knowingly and intelligently waived her right to be represented by counsel at sentencing. West argues that because there was no colloquy on the record that would inform this court that her waiver was knowingly and intelligently made, her waiver was invalid. The State disagrees and argues that even in the absence of a colloquy conducted by the sentencing court, the record shows that West knowingly and intelligently waived her right to counsel because she "was given a front row seat to the intricacies of navigating a criminal case" as she did not excuse her counsel until after the trial.

¶27 "Under both the United States and Utah Constitutions, a criminal defendant has the right to assistance of counsel," *State v. Hall*, 2013 UT App 4, ¶ 25, 294 P.3d 632, *cert. denied*, 308 P.3d 536 (Utah 2013), which includes the right to effective counsel for sentencing proceedings, *see State v. Casarez*, 656 P.2d 1005, 1007 (Utah 1982) ("Sentencing is a critical stage of a criminal proceeding at which a defendant is entitled to the effective assistance of counsel."). "Concomitant with that right is the

criminal defendant's guaranteed right to elect to present [one's] own defense." *State v. Hassan*, 2004 UT 99, ¶ 21, 108 P.3d 695; *see also State v. Pedockie*, 2006 UT 28, ¶ 26, 137 P.3d 716 ("Defendants also have the right to waive their right to counsel."). Because the right to counsel and the right to waive counsel are mutually exclusive, "a trial court must be vigilant to assure that the choice [to waive counsel] is freely and expressly made 'with eyes open.'" *State v. Bakalov*, 1999 UT 45, ¶ 15, 979 P.2d 799 (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)). "Before permitting a defendant to [self-represent], . . . a trial court should ensure that the waiver [of counsel] is voluntary, knowing, and intelligent." *Pedockie*, 2006 UT 28, ¶ 26.

¶28   A defendant may employ any of three different methods to validly waive a right to counsel: "true waiver, implied waiver, and forfeiture." *State v. Smith*, 2018 UT App 28, ¶ 17, 414 P.3d 1092.

¶29   At issue here is true waiver: "A true waiver is one in which the defendant affirmatively represents that [she] wishes to proceed without counsel." *Id*. ¶ 18. To be a valid true waiver, a defendant must "clearly and unequivocally" communicate to the court the wish "to proceed pro se." *Id.* (quotation simplified); *see also State v. Bozarth*, 2021 UT App 117, ¶ 34, 501 P.3d 116 ("True waiver occurs when a defendant directly communicates a desire to proceed pro se."). "Where a defendant expressly declines an offer of counsel by the trial judge" but later challenges the validity of that waiver, "[she] has the burden of showing by a preponderance of the evidence that [she] did not knowingly and intelligently waive this right." *Bozarth*, 2021 UT App 117, ¶ 39 (quotation simplified).[5]

---

5. This court has recently noted the dissonance between the language in *State v. Frampton*, 737 P.2d 183, 187 (Utah 1987)—that a defendant who expressly declines a trial court's offer of counsel then bears the burden to show "by a preponderance of the evidence that [she] did not so waive this right"—and the language

(continued…)

¶30 There is no question in this case that West clearly and unequivocally communicated to the court her desire to represent herself at sentencing. In her written motions, and then at the sentencing hearing when the court asked if she wanted a new lawyer, West plainly expressed her wish to proceed on her own without the assistance of counsel. But waiver alone is not enough to verify that West understood the significant right being waived and how her waiver might be applied in the real-world setting of sentencing. So, we must next address whether West's waiver was knowingly and intelligently made. *See id.* ¶ 34 ("To be a valid true waiver, the defendant must (1) clearly and unequivocally request self-representation *and* (2) act knowingly and intelligently, being aware of the dangers inherent in self-representation." (quotation simplified) (emphasis added)).

¶31 For a waiver to be knowingly and intelligently made, a defendant must understand "the relative advantages and disadvantages of self-representation in a particular situation." *State v. Frampton*, 737 P.2d 183, 188 (Utah 1987) (quotation simplified). In other words, a court must be satisfied that a defendant has "actual awareness of the risks of proceeding pro se under the particular facts and circumstances at hand." *Smith*, 2018 UT App 28, ¶ 19 (quotation simplified). The best way to ascertain if a defendant has the requisite knowledge of the legal mire she wishes to wade into is for a court to engage in "penetrating questioning," *Frampton*, 737 P.2d at 187, on the record, *see Smith*, 2018 UT App 28, ¶ 19. Such questioning is the "encouraged"

in *State v. Pedockie*, 2006 UT 28, ¶ 45, 137 P.3d 716—that because of the "strong presumption against waiver and the fundamental nature of the right to counsel, any doubts must be resolved in favor of the defendant." *See State v. Patton*, 2023 UT App 33, ¶ 22 n.6. We again take the liberty to suggest that the "better, and far clearer, rule would be that where a trial court fails to employ a *Frampton* colloquy, the presumption is that waiver did not occur and the burden would be placed on the State to prove otherwise. We hope that our supreme court would look favorably on such an articulation." *Id.*

practice for courts, utilizing *Frampton*'s "sixteen-point guide" as a framework to ensure a defendant is making the decision to proceed pro se knowingly and intelligently. *See id.*; *see also Pedockie*, 2006 UT 28, ¶ 42 ("The sixteen-point colloquy found in *State v. Frampton* establishes a sound framework for efficient and complete questioning."); *cf. State v. Patton*, 2023 UT App 33, ¶ 14 n.5 ("We encourage trial courts to keep a prepared *Frampton* waiver-of-counsel colloquy script at the ready on the bench, for use when the occasion arises.").

¶32 Absent a colloquy, it is still possible for a reviewing court to find that a defendant's waiver was validly made after examining "any evidence in the record which shows a defendant's actual awareness of the risks of proceeding pro se" at the time the defendant communicated the wish to self-represent. *Frampton*, 737 P.2d at 188. Therefore, we must conduct a "de novo review of the record to analyze the particular facts and circumstances surrounding the case" to establish "whether the defendant understood the consequences of waiver." *See Bozarth*, 2021 UT App 117, ¶ 41 (quotation simplified). However, more than once and quite recently, Utah's appellate courts have noted that such a conclusion is rare. *See id.* ("It is possible—although perhaps rare—for a defendant to knowingly and intelligently waive the right to counsel without a *Frampton* colloquy." (citation omitted)); *Pedockie*, 2006 UT 28, ¶ 45 ("We therefore anticipate that reviewing courts will rarely find a valid waiver of the right to counsel absent a colloquy.").[6]

---

6. Echoing previous decisions addressing this issue, "we continue to strongly recommend a colloquy on the record as the preferred method of determining whether a defendant is aware of [the] risks." *Pedockie*, 2006 UT 28, ¶ 42. While we are cognizant that the "colloquy is not mandatory," *State v. Bozarth*, 2021 UT App 117, ¶ 41, 501 P.3d 116, it is nevertheless "the most efficient means by which appeals may be limited," *Frampton*, 737 P.2d at 187. We encourage courts to engage in a full colloquy to ensure that

(continued…)

¶33 Given the rarity, we look to *Frampton* and *Bozarth* for instruction, both of which demonstrate when the record may support a conclusion that a defendant did knowingly and intelligently waive the right to counsel in the absence of an adequate colloquy. *See Frampton*, 737 P.2d at 188–89; *Bozarth*, 2021 UT App 117, ¶¶ 42–48.

¶34 In *Frampton*, the defendant was represented by counsel at a trial that resulted in a hung jury. 737 P.2d at 186. The defendant then opted to represent himself at a second trial that resulted in a mistrial. *Id.* A third trial was scheduled, and prior to the third trial, the defendant filed eighteen of his own motions, two of which "asserted his right to assistance of counsel," but he "insisted on being represented by a non-member of the Bar," which option is not constitutionally protected. *Id.* at 189. On the day of the third trial, the defendant indicated that he wished to represent himself, and the court acknowledged the defendant's right to self-representation and indicated that "[the defendant] would be accorded every courtesy along that line." *Id.* at 186 (quotation simplified). The court then appointed standby counsel, over the defendant's objections, but the defendant "refused to receive any help from the appointed counsel." *Id.* at 186, 189. On appeal, the Utah Supreme Court concluded that the defendant had "knowingly and intelligently waived the right to representation by counsel" for several reasons. *Id.* at 188–89. First, the record clearly indicated that the "value of counsel should have been apparent to defendant" because while represented, his trial ended in a hung jury. *Id.* at 189. Furthermore, the court noted that the record showed several instances that, taken together, supported a conclusion that the defendant was sufficiently versed in legal procedures and proceedings: (1) he had filed eighteen of his own motions, (2) he had explained to jurors "the statute under which he was charged," (3) he had been informed of the charge he faced and the possible penalty for a guilty verdict, and (4) he had been "accorded . . . every courtesy" by the court when it "explain[ed]

---

criminal defendants are conscious of the challenges that come with self-representation.

applicable procedure and [gave] defendant extremely wide latitude in conducting his defense." *Id.*

¶35 Likewise, in *Bozarth*, this court reached a similar conclusion regarding the question of whether a waiver was knowingly and intelligently made for a similar reason: the record showed as much. 2021 UT App 117, ¶ 44. In *Bozarth*, the defendant initially requested counsel but reserved his right to self-representation in the event that he wanted to "retake the helm" at a later time. *Id.* (quotation simplified). Additionally, prior to the defendant undertaking his own representation, the trial court had instructed and the defendant was aware of the importance of having counsel, and the defendant specifically requested that standby counsel be provided to "assist" only. *Id.* The defendant had even demonstrated knowledge about court procedures: he invoked the exclusionary rule at an evidentiary hearing and negotiated a plea deal that included his reservation of the right to appeal all prior objections, including "ineffective assistance of counsel." *Id.* ¶¶ 14, 18. Lastly, the defendant had been informed of the charges against him and the potential penalties of a conviction on his charges. *Id.* ¶ 44. The *Bozarth* court then concluded that, with all these things taken together, the defendant had failed to meet his burden of proving that he "did not knowingly and intelligently waive his right to counsel." *Id.*

¶36 But West's case went differently. Here, unlike the defendants in both *Frampton* and *Bozarth*, there is no indication in the record that West had been informed by her counsel or by the sentencing court of the risks she faced by proceeding alone, nor was it clear that she understood the associated value of having the assistance of counsel during her sentencing or that she understood the law or the procedural requirements of a sentencing hearing. When West elected to proceed pro se, the sentencing court simply mentioned on the record that by doing so, she may have put herself at a disadvantage, with no other discussion or explanation as to why West's decision would have done so. Again, this is in direct contrast to the facts of both *Frampton* and *Bozarth*, where those judges not only advised the

defendants of the risks of proceeding pro se, but also encouraged or insisted on appointing standby counsel in the event assistance was needed.

¶37 Furthermore, while it is true that West filed several pro se motions prior to sentencing, which action on its face could indicate an awareness of court procedures like in *Frampton*, the content of West's filings should have suggested to the sentencing court that she did not understand that attorneys and litigants are expected to conduct themselves with decorum and professionalism every time they enter the courtroom or file a pleading. The sentencing court even commented on the disparaging content of West's motions: "If you were a lawyer, you would, in all likelihood, if you said those kinds of things to a judge, and wrote the kinds of things that you did, there's a significant possibility that you would have sanctions issued against you." But even with these indications that West perhaps did not grasp the implications of proceeding without counsel, the sentencing court's investigation of West's knowledge of the risks of self-representation stopped there.[7]

¶38 The State defends West's waiver as knowing and intelligent because West "was given a front row seat" to observe her trial counsel at trial and argues that this knowledge was sufficient to establish that West knew the "intricacies of navigating a criminal case." We disagree with this reasoning. Merely observing court proceedings does not provide an untrained pro se defendant with the awareness or knowledge of the risks of appearing for sentencing without representation. Few lay people, even after observing a trial from start to finish, would then be able to understand "the

---

7. Of further note, the April 2021 sentencing hearing occurred sixteen months after the sentencing review hearing at which West verbally asserted her desire to self-represent at sentencing. Sixteen months is a long time—with a pandemic in the middle, no less—and it would have been helpful to revisit West's intention of being sentenced without an attorney.

various matters germane to a sentencing proceeding," such as the ability to argue mitigating circumstances and evidence to influence sentencing. *See State v. Smith*, 2018 UT App 28, ¶ 26, 414 P.3d 1092. For instance, a sentencing may involve discussion of the actions that a defendant may take following a guilty verdict, the financial ability that a defendant has to pay a fine or pay for a remedial course, appropriate lengths of jail time or suspended jail time, and previous criminal history. Without prior exposure to a sentencing for a charge of violating a stalking injunction, it is not persuasive to argue that West would understand the differences between a trial and a sentencing proceeding and the risks she assumed by continuing without the assistance of counsel to aid her in arguing, for instance, against the imposition of an anger management class or for a reduced fine or suspended jail time. We therefore strongly disagree that West's "observations" of her attorney in action in court proceedings resulted in something that resembled the legal acuity or understanding of court proceedings that the defendants in *Frampton* and *Bozarth* exhibited.

¶39 Accordingly, we conclude that West has met her burden to show that her waiver of counsel prior to sentencing, though express, was not knowingly and intelligently made. The sentencing court should have conducted further inquiry into West's awareness, or lack thereof, of the risks of self-representation before allowing her to be sentenced without the assistance of counsel. Therefore, we vacate West's sentence and remand for resentencing.[8]

---

8. During oral argument, there was discussion about whether what occurred at West's sentencing would be subject to "harmless error" review. However, the State acknowledged that it did not brief this argument. Therefore, "we do not address [the argument] on its merits." *See State v. Smith*, 2018 UT App 28, ¶ 27 n.2, 414 P.3d 1092.

CONCLUSION

¶40 We are not convinced by West's argument that the trial court abused its discretion in denying the pretrial motions, because West has not met her burden to show that if the other-acts evidence had been excluded or her motion to continue had been granted the outcome of her trial would have been different. We therefore affirm West's conviction. However, we are persuaded that West did not knowingly and intelligently waive her right to be represented by counsel at her sentencing. We therefore vacate West's sentence and remand for the limited purpose of resentencing.

———————