2024 UT App 2

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TIMOTHY LEE,
Appellant.

Opinion
No. 20220208-CA
Filed January 5, 2024

Seventh District Court, Monticello Department
The Honorable Don M. Torgerson
No. 191700205

Dain E. Smoland, Attorney for Appellant

Sean D. Reyes and Connor Nelson,
Attorneys for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and
DAVID N. MORTENSEN concurred.

OLIVER, Judge:

¶1 Timothy Lee was unhappy with his defense counsel's representation. After asking a few superficial questions, the district court allowed Lee to waive his right to assistance of counsel. Lee then represented himself at trial and was convicted on all charges. On appeal, he argues his waiver was not knowingly and intelligently made. We agree, vacate Lee's convictions, and remand the case for a new trial.

BACKGROUND

¶2     Lee was speeding at 96 miles per hour in a 65-mile-per-hour zone on the highway when a San Juan County deputy sheriff (Deputy) activated his emergency lights to pull Lee over. Lee slowed but did not stop until another officer intercepted him four miles down the road. Lee's vehicle registration was suspended because he did not have car insurance, and Deputy found THC gummies, oils, and pills in Lee's car during an inventory search. Lee was charged with one felony and five misdemeanors: failure to respond to Deputy's signal to stop, possession or use of a controlled substance, possession of drug paraphernalia, reckless driving, driving with a suspended license or registration, and driving without motor vehicle insurance.

¶3     At his initial appearance, the court denied Lee's request for appointed counsel because he did not meet the financial qualifications. Lee later retained his own counsel (Counsel), who filed a discovery request and appeared at his arraignment. At the beginning of the arraignment, Counsel informed the court that she wanted to conference with Lee and have his case recalled that afternoon. But Lee stated, "I don't want [Counsel] to be my lawyer." The court asked Lee whether he would hire new counsel, to which Lee said, "I haven't made that decision today yet, but for right now, I'm choosing to represent myself." The court stated, "It's unlikely that I'm going to let you represent yourself unless you can answer a few questions for me," and then set a hearing for two weeks later. But Lee stated, "We don't have to wait two weeks . . . ask me the questions now." The court then initiated the following exchange:

> The Court:  Mr. Lee, how many criminal cases have you been involved with as a defendant?
>
> Lee:        This is my only one.

The Court:   How many times have you been involved in any court cases, including civil cases as a party?

Lee:   This is the only one here in Utah.

The Court:   Have you ever been involved in another state in any kind of court case?

Lee:   California.

The Court:   Okay. And did you represent yourself in those cases or that case?

Lee:   Actually, that case has been pending.

The Court:   Are you representing yourself in that case?

Lee:   We haven't gone that far yet.

The Court:   Have you ever represented yourself in a court case?

Lee:   I've never represented myself in a court case.

The Court:   Okay. Are you familiar with the Utah Rules of Criminal Procedure?

Lee:   I know I have a constitutional right to represent myself in court.

The Court:   That may or may not be accurate, so that's what I'm asking you is: Are you familiar with the Utah Rules of Criminal Procedure?

| Lee: | Well, it depends on what you mean by "familiar." |
|---|---|
| The Court: | Have you ever read them? |
| Lee: | No. |
| The Court: | Okay. Why do you think it's in your best interest to represent yourself in this case? |
| Lee: | Well, first of all, I don't think [Counsel] has been working in my interest at all. |
| The Court: | Aside from what [Counsel] did or hasn't done, I'm wondering why you think it's better that you represent yourself versus . . . hiring a different attorney to represent you? |
| Lee: | Well, I'll actually explain that when we go to trial because I would like to go to trial immediately. |
| The Court: | Okay. |

¶4    The court then "provisionally" found that Lee had knowingly and voluntarily waived his right to counsel but remained "not entirely convinced," promising to "have more of a discussion" about waiver at a scheduling conference one month later. But at that scheduling conference, this promised discussion consisted only of the court asking, "Mr. Lee, do you choose to still represent yourself in this case?" and Lee answering, "Yes sir." The court then set a trial date.

¶5    The day after the scheduling conference, Lee spray-painted the wall of the Public Safety Building in Monticello, Utah, with

the words "Tim Lee versus Utah" and "justice delayed is justice denied, a trial 2,000 years in the making." Lee was found sitting on the front steps of the building with a can of black spray paint and $680 dollars in cash—"the exact cash amount needed to bail [himself] out on a Class B misdemeanor." The information against Lee was later amended to add a charge for graffiti.

¶6     Representing himself at trial, Lee questioned prospective jurors and, after being informed of the right by the court, exercised his peremptory strikes. Lee cross-examined several of the State's witnesses and took the stand to testify in his own defense—though his testimony garnered multiple objections and interventions by the court. After being cross-examined, Lee gave a closing argument, in which he argued for his innocence. But the jury found him guilty on all seven charges.

## ISSUE AND STANDARD OF REVIEW

¶7     On appeal, Lee argues he did not knowingly and intelligently waive his right to counsel. "Whether [a defendant's] waiver was knowing and intelligent involves a mixed question of law and fact which we review for correctness, but with a reasonable measure of discretion given to the trial court's application of the facts to the law." *State v. West*, 2023 UT App 61, ¶ 17, 532 P.3d 114 (cleaned up).

## ANALYSIS

¶8     "Under both the United States and Utah Constitutions, a criminal defendant has the right to assistance of counsel." *State v. West*, 2023 UT App 61, ¶ 27, 532 P.3d 114 (cleaned up). "Concomitant with that right is the criminal defendant's guaranteed right to elect to present one's own defense." *Id.* (cleaned up). Relinquishing the right to counsel "may occur in three ways: true waiver, implied waiver, or forfeiture." *State v.*

*Bozarth*, 2021 UT App 117, ¶ 33, 501 P.3d 116. "True waiver occurs when a defendant directly communicates a desire to proceed pro se." *Id.* ¶ 34. To be a valid true waiver, a defendant must "(1) clearly and unequivocally request self-representation and (2) act knowingly and intelligently, being aware of the dangers inherent in self-representation." *Id.* (cleaned up). Lee does not dispute that he clearly and unequivocally expressed his desire to represent himself. He argues only that he did not do so knowingly and intelligently.

¶9 Because "pro se defendants may often find themselves at a serious disadvantage in our legal system," it is "the solemn duty of the trial court" to ensure defendants exercise their right of self-representation "voluntarily, knowingly, and intelligently." *State v. Hassan*, 2004 UT 99, ¶¶ 21–22, 108 P.3d 695 (cleaned up). "In making this determination, the defendant should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *State v. Frampton*, 737 P.2d 183, 187 (Utah 1987) (cleaned up). "The best way to ascertain if a defendant has the requisite knowledge of the legal mire [they] wish[] to wade into is for a court to engage in 'penetrating questioning'" through a colloquy on the record. *West*, 2023 UT App 61, ¶ 31 (cleaned up).

¶10 Here, the court attempted—or at least began—a colloquy on the record at Lee's arraignment. But, as both sides agree, it was only a "partial colloquy." In *State v. Frampton*, 737 P.2d 183 (Utah 1987) our supreme court cited a model list of sixteen questions to guide district courts in conducting such colloquies. *Id.* at 187 n.12 (quoting 1 Fed. Jud. Ctr., *Bench book for U.S. District Court Judges*, §§ 1.02-2 to -5 (3d ed. 1986)). At best, the court's attempted colloquy addressed only two of *Frampton*'s recommended questions. The court asked Lee about his previous experience representing himself or someone else in any civil or criminal matters, which addressed *Frampton*'s second recommended

question. *See id.* ("Have you ever represented yourself or any other defendant in a criminal action?" (cleaned up)). And the court asked Lee whether he was familiar with the Utah Rules of Criminal Procedure, addressing *Frampton*'s ninth recommended question. *See id.* ("Are you familiar with the . . . Rules of Criminal Procedure?" (cleaned up)). A colloquy "need not follow [*Frampton*'s] precise script." *State v. Patton*, 2023 UT App 33, ¶ 14, 528 P.3d 1249.[1] But the partial colloquy here did not show whether Lee had an "actual awareness of the risks of proceeding pro se under the particular facts and circumstances at hand" and "understood the consequences of waiver." *State v. Smith*, 2018 UT App 28, ¶¶ 19–20, 414 P.3d 1092 (cleaned up). Thus, the colloquy was inadequate.

¶11    "In the absence of [an adequate] colloquy, we review the record de novo to determine whether the defendant knowingly and intelligently waived [the] right to counsel." *West*, 2023 UT App 61, ¶¶ 17, 33 (cleaned up). Our review of the record "must somehow otherwise show that the defendant understood the seriousness of the charges and knew the possible maximum penalty" and "should also show that the defendant was aware of the existence of technical rules and that presenting a defense is not just a matter of telling one's story." *Frampton*, 737 P.2d at 188 (cleaned up).

¶12    In *Frampton*, our supreme court stated that, in conducting this de novo review, the court "will look at *any* evidence in the record which shows a defendant's actual awareness of the risks of

---

1. We recently suggested, as a best practice, that district judges "keep a prepared *Frampton* waiver-of-counsel colloquy script at the ready on the bench, for use when the occasion arises." *State v. Patton*, 2023 UT App 33, ¶ 14 n.5, 528 P.3d 1249. Given the recent frequency of challenges to waiver colloquies before this court, *see e.g. State v. West*, 2023 UT App 61, 532 P.3d 114; *Patton*, 2023 UT App 33, we echo that suggestion here.

proceeding pro se." *Id.* (cleaned up) (emphasis added). But later, in *State v. Pedockie*, 2006 UT 28, 137 P.3d 716, the court emphasized that the validity of a defendant's waiver must be assessed "*at the time of the alleged waiver*." *Id.* ¶ 50 (emphasis added). There, the court concluded a defendant's waiver was not knowing or intelligent because "[w]hile [the defendant] arguably obtained some understanding of the[] technical requirements" of trial "during the course of the proceedings," the record was "devoid of evidence" that the defendant "understood these requirements prior to the time of the alleged waiver." *Id.* ¶ 51.

¶13 The holding in *Pedockie* indicates that, in cases like this one, where a colloquy—albeit an inadequate one—has occurred, the appellate court's de novo review of a defendant's waiver is limited to events occurring prior to or at the time of that colloquy. The State contends that we should consider all of Lee's post-waiver conduct because *Frampton*'s "analysis considering post-waiver conduct . . . remains good law." We need not decide whether this assertion is correct, however, because even considering all of Lee's post-colloquy conduct—including at trial—it is clear that Lee's waiver of counsel, while voluntary, was not knowingly and intelligently made.

¶14 The State points to the minute entry from Lee's initial appearance, arguing the entry shows he understood the significance of the charges against him. While the minute entry does state that Lee was "[a]dvised of charges and penalties" and of his "right to counsel," this is substantially all it says. The minutes do not indicate whether Lee understood the nature of these charges. The State also argues that because Counsel prepared a plea agreement on Lee's behalf, we can "infer that [she] informed [Lee] of the nature of the charges and penalties." But as soon as the colloquy hearing began, Counsel informed the court that she "would like to be able to answer Mr. Lee's questions about his defendant statement" and to have his case recalled that afternoon. This suggests Lee's interactions with Counsel had been

limited and that the two of them had not had an opportunity to discuss Lee's charges prior to his waiver.

¶15    The State also argues the minute entries from Lee's initial appearance show that he understood the value of representation. Again, the minutes state only that Lee was informed of his right to counsel—not that he actually contemplated the value of representation. The State also argues that the work Counsel performed on Lee's behalf prior to his waiver informed him of the value of counsel. But Lee did not have anything more than nominal observation of Counsel engaged in court proceedings. She had filed one discovery request on his behalf. And Lee dismissed her almost immediately at his arraignment. This does not assure us that Lee understood the value of representation.

¶16    Further, the record indicates that Lee did not grasp the significance of the trial proceedings. The State argues that Lee's rejection of a plea agreement and his performance during trial indicate that he was aware of the technical complexities of trial. Lee did reject the plea agreement in favor of contesting the charges against him at trial, which indicates he appreciated the utility of trial. But "such general knowledge does not necessarily evidence an understanding of the technical requirements inherent in presenting one's case." *Pedockie*, 2006 UT 28, ¶ 51. And during trial, Lee's testimony repeatedly strayed into conclusions about the legality of marijuana in Nevada, Colorado, and California and constitutional arguments about the delay of his trial due to the COVID-19 pandemic—prompting the court to remind him multiple times to testify only to relevant facts or to conclude his testimony. This indicates he was not aware of or able to follow trial procedures, even after repeated explanations by the court.

¶17    Finally, and perhaps most critically, our review of the record should indicate that Lee understood "that presenting a defense is not just a matter of telling one's story." *Frampton*, 737 P.2d at 188 (cleaned up). Here, Lee testified that he wanted the

jury to "hear [his] story" and that it was "quite a story." Later he asked the court, "I can speak my mind, tell the story of why [my constitutional rights have] been violated; correct?" Lee stated that his testimony "comes with a story" and asked the court, "I'm going to make an accusation and then I can prove that accusation with a story. No?" Later, during the State's cross-examination of Lee, he said, "[I]f I was allowed to tell my story that would all make sense." And he asked the State, "Can I tell my story?" before saying, "Let me tell you my story." Because Lee mentions telling his story more than a dozen times during trial, it is clear he saw his trial as little more than his opportunity to do just that.

¶18    Our review of all the record evidence does not convince us that Lee recognized the nature of the charges against him, was aware of the value of representation or the technicality of trial proceedings, or understood that his trial was more than a mere opportunity to tell his story. *See id.* And "considering the strong presumption against waiver and the fundamental nature of the right to counsel, any doubts must be resolved in favor of the defendant." *Pedockie*, 2006 UT 28, ¶ 45. Given this strong presumption against waiver[2] and the lack of evidence to the

_____

2. As we have pointed out in prior decisions, this "strong presumption against waiver" and our resolution of doubt "in favor of the defendant" is in tension with our supreme court's allocation of burden on the defendant. *See State v. Frampton*, 737 P.2d 183, 187 (Utah 1987) (concluding when a defendant "expressly decline[s] an offer of counsel by the trial judge, he has the burden of showing by a preponderance of the evidence that he did not so waive this right"). As we recently suggested, "A better, and far clearer, rule would be that where a trial court fails to employ a *Frampton* colloquy, the presumption is that waiver did not occur and the burden would be placed on the State to prove otherwise." *Patton*, 2023 UT App 33, ¶ 22 n.6,; *see also West*, 2023 UT App 61, ¶ 29 n.5. Again, "We hope that our supreme

(continued…)

contrary, we conclude that Lee's waiver was not knowing and intelligent.

CONCLUSION

¶19    Because we conclude Lee waived his right to assistance of counsel without a knowing and intelligent understanding of the consequences of the decision, we vacate his convictions and remand the case for a new trial.

_____

court would look favorably on such an articulation." *Patton*, 2023 UT App 33, ¶ 22 n.6.