**2025 UT App 150**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MICHAEL CHARLES MCLAIN,
Appellant.

Opinion
No. 20230241-CA
Filed October 17, 2025

Eighth District Court, Duchesne Department
The Honorable Samuel P. Chiara
No. 211800180

Wendy M. Brown, Debra M. Nelson, and
Benjamin Miller, Attorneys for Appellant

Derek E. Brown and Karen A. Klucznik,
Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

TENNEY, Judge:

¶1      Michael Mclain was charged with one count of aggravated sexual abuse of a child, three counts of rape of a child, and one count of attempted rape of a child. Before trial, Mclain requested leave to represent himself, and the court granted Mclain's request. The case went to trial, and the jury convicted Mclain as charged.

¶2      With the benefit of appellate counsel, Mclain now challenges his convictions on several grounds. For the reasons set forth below, we address two of them. First, Mclain argues that the district court did not ensure that Mclain had knowingly and intelligently waived his right to counsel. The State concedes that there was reversible error on this front, so we reverse Mclain's

convictions on that basis and remand for further proceedings. Second, Mclain argues that there was insufficient evidence to support his conviction for attempted rape of a child. Because our resolution of this issue would impact proceedings on remand, we address it. As explained below, there was sufficient evidence to support this conviction, so we reject this claim.

BACKGROUND

¶3    In April 2021, Mclain's daughter (Daughter) reported to authorities that Mclain had sexually assaulted and raped her multiple times from 2009 to 2019. In June 2021, Mclain was charged with one count of aggravated sexual abuse of a child, three counts of rape of a child, and one count of attempted rape of a child.

*Waiver of Counsel*

¶4    Mclain was found indigent and appointed counsel (Counsel). At a hearing that was held on September 13, 2021, Counsel informed the district court that Mclain wanted to "do" the preliminary hearing "himself" and then have a form of "hybrid counsel" in which Counsel would be "standing by" moving forward. Counsel asked for a continuance so that he could "look at" whether hybrid counsel is allowed in Utah, as well as to "show [Mclain] what the risks are of doing his own preliminary hearing." The court granted the continuance.

¶5    At a subsequent hearing that was held on September 20, 2021, Counsel informed the court that Mclain "was not interested in having" Counsel "or any other public defender" represent him. Counsel also told the court that Mclain had written a letter indicating that he "had some serious mental issues." When the court asked Mclain to comment on what Counsel had said, Mclain told the court, "I definitely would like to represent myself in case

need be. I don't think there's anybody that can do it better than the man doing something he didn't do, Your Honor." The court responded:

> All right. Well, there's nobody who can testify better than you can testify, but as far as taking action in court to object to procedure or to object to evidence, just because you're the one who's charged doesn't— and you may know more about the facts of the case than anyone else. It's certainly not—that does not necessarily mean that you know more about the law, the procedure or the rules of evidence than someone else. And so . . . you're going to want someone to help you there.

Without resolving the issue of whether Mclain would represent himself, the court continued the proceedings and scheduled another hearing.

¶6 At the next hearing, which was held in October 2021, Counsel informed the court that Mclain "prefers to represent himself." Counsel again expressed concern about Mclain's "mental issue." Later that day, Counsel filed a petition for a competency evaluation, which the court soon ordered. In January 2022, the court reviewed the evaluation and found Mclain to be incompetent but with "a substantial probability of being restored to competency in the foreseeable future." Mclain subsequently received treatment, and at a hearing in April 2022, the court found that Mclain had been restored to competency.

¶7 At a status hearing in October 2022, Counsel reminded the court that Mclain "wanted to do the case himself." When the court addressed Mclain, it expressed its understanding that he was now "representing [himself]." In various proceedings that were held over the next several months, the court repeatedly expressed that

same understanding, and Mclain continued representing himself through the eventual trial.[1]

---

1. As noted, at the outset of the case, Counsel requested leave to look into the possibility of Mclain receiving "hybrid counsel" with Counsel "standing by." The court later allowed Mclain to represent himself, but it clarified at an early hearing that Counsel would still "advise" Mclain and "sit with him." At another hearing, the court said that Counsel could provide "assistance on the outside" and act "as an aid in the courtroom." Counsel filled such a role at trial, stepping in to help Mclain with the questioning of various witnesses and with the admission of his exhibits.

Throughout these proceedings, Counsel and the court continued to refer to Mclain as having "hybrid counsel," and at various times, Counsel suggested that this was justified under a procedure that he had found in California law. Since this case is being remanded, we reiterate that under Utah law, a "defendant is not entitled to a hybrid representation in a criminal case," and this is so because such an arrangement "creates confusion as to who is the ultimate decision-maker," "may lead to ethical concerns for counsel if there is disagreement over trial strategy," and "presents courtroom-management challenges for the trial judge." *State v. Grover*, 2022 UT App 48, ¶ 55, 509 P.3d 223 (quotation simplified).

That said, the process that was actually followed seems more akin to one in which Counsel was acting as "standby counsel." *State v. Rohwedder*, 2018 UT App 182, ¶ 15, 436 P.3d 324 ("Courts have traditionally appointed standby counsel to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." (quotation simplified)). Standby representation "does not alter a party's pro se status." *Id.* ¶ 15 (quotation simplified). Rather, it involves a

(continued…)

*Trial*

¶8    After a preliminary hearing, Mclain was bound over on all charges. The case later went to a jury trial.

¶9    At trial, the State's only witness was Daughter. Daughter testified about the events supporting the five counts as follows:

- **Count 1 (aggravated sexual abuse).** Daughter said that when she was 5 years old, Mclain came into her bedroom one night, closed the door, took her clothes off, laid her down on her bed, and touched her breasts and vagina. Daughter said that when she tried to push Mclain off, "he got aggressive." She "got really scared" and called for her mom, at which point Mclain left the room.

- **Count 2 (rape of a child).** Daughter said that one evening when she was 10 years old, Mclain came into her bedroom, "slammed the door," and "came really close" to her. Daughter said that she tried to "push him off," that she "told him no," and that she "stood up on [her] bed" and went "to the other side" in an effort to get away from him. When Daughter was asked why she reacted this way, she said that she remembered "the first time," and "at this age" she now "kind of understood what was going on" and "didn't want it to happen again." Daughter said that Mclain grabbed" her, "forced [her] on the bed," took her

situation in which a criminal defendant "invokes the right to self-representation" but "requests help," *id.* ¶¶ 13, 15 (quotation simplified), and Utah courts have previously recognized that standby counsel is permitted, *see id.* ¶ 16 ("We recognize that there can be value in appointing standby counsel to assist a pro se defendant who lacks adequate access to the resources necessary to present his defense or to help the defendant with questions of procedure and protocol in the courtroom.").

clothes off except for her bra, and then "raped" her, which she clarified meant that Mclain had "sexual intercourse" with her. Daughter said that she "was crying and telling him no the whole time."

- **Count 3 (rape of a child).** Daughter said that on another occasion when she was 9 or 10 years old, she was alone in the basement one afternoon playing Xbox when Mclain entered through the basement door, came up to her, took her clothes off, pinned her down on the couch, and "raped [her] again," which she clarified as meaning that he "put his penis in [her] vagina." Daughter said that she initially "froze" and "couldn't move or fight him off," but that in "the middle" of the intercourse, she threw the Xbox controller at him, at which point Mclain just "picked it up and threw it and got really angry."

- **Count 4 (rape of a child).** Daughter said that on an occasion when she was "almost 11" years old, she was downstairs in the basement when Mclain called her up from the top of the stairs. She said that when she got upstairs to the living room, Mclain forced her onto the couch and again "rape[d]" her by putting "his penis" in her "vagina." Daughter said that she tried to "fight him off" by trying to get her "legs under [him] so [she] could kick him off" but that she "couldn't." She also said that she "tried to punch him, but it didn't work."

- **Count 5 (attempted rape of a child).** After recounting the above incidents, Daughter was asked, "Were there any other times that something happened?" She replied, "Not sexual intercourse or anything like that, but he did try again." Daughter then testified that on an occasion when she was 11 years old, she was upstairs in her bedroom when Mclain "came in," "shut the door," and "got on top of" her. Daughter said that she was lying "on [her] bed on

[her] phone" and "really didn't want it to happen again," so she "kneed him multiple times in the stomach and the groin." She said that after she kneed Mclain, he "rolled over," at which point she "jumped off the bed." She said that Mclain then "got up and slammed the door and left the house."

¶10 In the jury instructions, the jury was told that for purposes of Count 5, it could not convict unless it found beyond a reasonable doubt that Mclain had intentionally, knowingly, or recklessly "[a]ttempted to have sexual intercourse" with Daughter while she "was under 14 years old." The jury was further instructed that "[a] person is guilty of an attempt to commit a crime if he engages in conduct constituting a substantial step toward commission of the crime and intends to commit the crime. Conduct constitutes a substantial step if it strongly corroborates the actor's intent to commit the crime." During the portion of closing argument in which the prosecutor addressed Count 5, the prosecutor explained, "Throwing [Daughter] on the bed is what I'm submitting to you is a substantial step towards the crime. [Mclain] had done this kind of thing to her before. She said that the reason why she was running is she was afraid that it was going to happen again."

¶11 The jury convicted Mclain on all five counts.

ISSUES AND STANDARDS OF REVIEW

¶12 Mclain raises several issues on appeal, but as explained below, we need address only two of them.

¶13 First, Mclain argues that the district court erred by allowing him to represent himself without first ensuring that he had knowingly and intelligently waived his right to counsel. "Whether a defendant's waiver [of counsel] was knowing and

intelligent involves a mixed question of law and fact which we review for correctness, but with a reasonable measure of discretion given to the trial court's application of the facts to the law." *State v. Lee*, 2024 UT App 2, ¶ 7, 542 P.3d 974 (quotation simplified).

¶14 Second, Mclain argues that the district court erred in submitting the attempted rape of a child charge to the jury given that, in Mclain's view, the evidence was insufficient to support conviction. Mclain concedes that this issue is unpreserved, so he asks us to review it for plain error. Because a plain error claim "involves no lower court ruling, we decide the claim in the first instance as a matter of law." *State v. Dew*, 2025 UT App 22, ¶ 28, 566 P.3d 53, *cert. denied*, 568 P.3d 264 (Utah 2025).

ANALYSIS

I. Right to Counsel

¶15 "The Sixth Amendment to the United States Constitution guarantees defendants the right to counsel in felony proceedings." *State v. Pedockie*, 2006 UT 28, ¶ 25, 137 P.3d 716. "Defendants also have the right to waive their right to counsel." *Id.* ¶ 26. However, "because pro se defendants may often find themselves at a serious disadvantage in our legal system, it is the solemn duty of the trial court to ensure defendants exercise their right of self-representation voluntarily, knowingly, and intelligently." *State v. Lee*, 2024 UT App 2, ¶ 9, 542 P.3d 974 (quotation simplified). Our cases set out two paths under which a court can find that a defendant's waiver was knowing and intelligent. First, "a colloquy on the record," in which the court explains the disadvantages of self-representation, is "the preferred method of determining whether a defendant is aware of" the risks of proceeding pro se. *Pedockie*, 2006 UT 28, ¶ 42. Second, "[a]bsent a colloquy on the record, a reviewing court

should review the record de novo to determine whether the defendant knowingly and intelligently waived" his or her right to counsel. *Id.* ¶ 45.

¶16 As discussed above, the only colloquy in which the court appears to have discussed the disadvantages of self-representation with Mclain occurred during the September 20, 2021, hearing. In his opening brief, Mclain argues that this colloquy was inadequate under our caselaw. Mclain further argues that, even if the colloquy was somehow adequate, it occurred during a period in which he was incompetent—and, thus, that his waiver of his right to counsel could not have been knowing or voluntary.

¶17 In its responsive brief, the State concedes that "under the Court's recent precedent, a new trial is required because the record doesn't show Mclain's waiver of counsel was knowing and intelligent." *See, e.g.*, *Lee*, 2024 UT App 2; *State v. West*, 2023 UT App 61, 532 P.3d 114; *State v. Patton*, 2023 UT App 33, 528 P.3d 1249. Having reviewed the record ourselves, we conclude that Mclain's arguments and the State's concession are well-taken. We accordingly reverse Mclain's convictions and remand for further proceedings.[2]

---

2. In his opening brief, Mclain raises two additional issues that warrant brief mention here. First, Mclain argues that the district court improperly deprived him of several peremptory challenges during jury selection. Second, Mclain argues that the verdict form was flawed because it instructed the jury to deliberate on his "guilt or innocence" with respect to each charge. In its responsive brief, the State suggests that if we reverse on the waiver of counsel issue, we need not address the peremptory challenge and verdict form issues because the alleged errors are "unlikely to recur on retrial" and "can easily be avoided on remand." Mclain does not

(continued…)

## II. Sufficiency of the Evidence

¶18 Mclain next argues that the court should have directed a verdict on Count 5 (which, as explained, was for attempted rape of a child) because, in Mclain's view, there was insufficient evidence to support conviction on that count. We disagree.[3]

¶19 As noted, the offense at issue is attempted rape of a child. A person commits rape of a child by having sexual intercourse with an individual who is younger than 14 years old. *See* Utah Code § 76-5-402.1(1)(a), (2). A person is guilty of an attempted crime if he or she (1) "engages in conduct constituting a substantial step toward commission of the crime" and (2) "intends to commit the crime." *Id.* § 76-4-101(1)(a), (1)(b)(i).

---

argue otherwise in his reply brief. We accordingly decline to address those issues.

3. Unlike the peremptory challenge and verdict form issues, the State concedes that it's appropriate for us to address this issue, and we agree. It's well-settled that a directed verdict functions as an acquittal for double jeopardy purposes. *See State v. Musselman*, 667 P.2d 1061, 1065 (Utah 1983) ("Once a criminal charge has resulted in an acquittal[,] . . . the prohibition against double jeopardy prevents that determination from ever again being challenged. It is of no consequence that the determination was made as a matter of law by a directed verdict of acquittal, or as a matter of fact by the trier of fact."); *State v. Cegers*, 2019 UT App 54, ¶ 18, 440 P.3d 924 (reviewing a district court's denial of a defendant's motion for a directed verdict because "if the evidence at trial was insufficient to sustain [the defendant's] convictions, double jeopardy may bar retrial"). Thus, if Mclain is correct that he was entitled to a directed verdict on this count, he could not be retried for it on remand. It's therefore appropriate—indeed, necessary—for us to resolve this issue.

¶20    In Mclain's view, there was no evidence to show that he did anything more than "get[] on top of" Daughter, which he regards as insufficient to constitute a substantial step toward attempted rape of a child. Mclain also argues that the evidence was insufficient to show that he had the intent "to engage in sexual intercourse, as opposed to some other sexual conduct." Mclain acknowledges that he did not request a directed verdict below, but he nevertheless argues that it was plain error for the district court to not order one sua sponte. We disagree.

¶21    As a general matter, plain error requires an appellant to establish that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *State v. Draper*, 2024 UT App 152, ¶ 38, 560 P.3d 122 (quotation simplified). To establish plain error with respect to an alleged insufficiency of the evidence, "a defendant must demonstrate first that the evidence was insufficient to support a conviction of the crime charged and second that the insufficiency was so obvious and fundamental that the trial court erred in submitting the case to the jury." *State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346. A court evaluates whether a directed verdict is warranted by determining whether "some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt" when the evidence is "viewed in the light most favorable to the State." *State v. Buranek*, 2025 UT App 92, ¶ 16, 573 P.3d 440 (quotation simplified). When viewed against this standard, we don't believe that it should have been obvious to the district court in this case that there was not at least some evidence that could support the conclusion that Mclain took a substantial step toward rape of a child and that he did so with the requisite intent.

¶22    Under the attempt statute, "conduct constitutes a substantial step if it strongly corroborates the actor's mental state." Utah Code § 76-4-101(2). In this sense, the substantial step

and intent elements are somewhat intertwined. *See, e.g., State v. Smith*, 2024 UT 13, ¶¶ 23–24, 548 P.3d 874 (discussing whether acts that are "mere preparation" could constitute a substantial step and noting that "if, in a particular case, preparatory actions are deemed not to constitute a substantial step, it is because the conduct in question did not strongly corroborate the actor's intent to commit the underlying crime under the circumstances, not because there is a categorical rule that preparation is insufficient as a matter of law"). It is well-established that "intent can be proven by circumstantial evidence." *Holgate*, 2000 UT 74, ¶ 21 (quotation simplified). "When intent is proven by circumstantial evidence," the court "must determine (1) whether the State presented any evidence that [the defendant] possessed the requisite intent, and (2) whether the inferences that can be drawn from that evidence have a basis in logic and reasonable human experience sufficient to prove that [the defendant] possessed the requisite intent." *Id.* (quotation simplified).

¶23  Daughter testified that Mclain "came in" to her bedroom while she was alone, "shut the door," and "got on top of" her. She testified that she had to physically fight him off, at which point she "jumped off the bed" and Mclain "got up and slammed the door and left the house." Thus, by Daughter's account, this was not a benign encounter, but it was instead a decidedly aggressive one. "It is the jury's role to determine the weight and credibility of [the] evidence," and juries are allowed to draw "reasonable inferences" when doing so. *State v. Mead*, 2001 UT 58, ¶ 67, 27 P.3d 1115. Here, it is not obvious to us that when Daughter testified about an encounter in which Mclain got on top of her in her bedroom and she had to physically fight him off, a jury couldn't draw a reasonable inference from these facts alone that Mclain was trying to have sexual intercourse with her.

¶24  And this is particularly so given the other facts that were before the jury. As noted, Daughter had just testified about three incidents in which Mclain had sexual intercourse with her.

Immediately after she finished testifying about those incidents, the prosecutor asked her if there were "any other times that something happened?" Daughter's response was, "Not sexual intercourse or anything like that, but he did *try again*." (Emphasis added.) After this exchange, Daughter was asked to describe the incident that supported the attempted rape of a child charge. While testifying about this event, Daughter said that she fought Mclain off because she "really didn't want it to happen *again*." (Emphasis added.)

¶25   By twice using the word "again," Daughter expressly linked the prior incidents of sexual intercourse to what she thought Mclain was attempting to do in this instance. And the prosecutor drew this same link during closing argument, telling jurors, "Throwing [Daughter] on the bed is what I'm submitting to you is a substantial step towards the crime. [Mclain] had done this kind of thing to her before. She said that the reason why she was running is she was afraid that it was going to happen again." Thus, Daughter expressly testified as to the link between the incidents, and the prosecutor asked the jury to use Daughter's testimony about the other alleged rapes as evidence of Mclain's intent to have sexual intercourse with her on this occasion.

¶26   Despite all this, Mclain argues on appeal that there were two reasons why the jury could not actually draw this link.

¶27   First, Mclain claims the district court had given an instruction that foreclosed this. But we read the instruction in question differently. In that instruction, the jury was told to "consider each charge separately" and, "[f]or each crime charged, [to] consider all of the evidence related to that charge." The jury was also told that its "verdict on one charge does not determine [its] verdict on any other charge."

¶28   But although the jury had been instructed to consider each *charge* separately, that instruction didn't preclude the jury from

using *evidence* that supported one charge as circumstantial evidence of Mclain's intent relating to another charge. To the contrary, the jury was instructed to "consider all of the evidence related to" each charge. And we note here that evidence is sometimes used to show a defendant's intent with respect to more than one charge. In *State v. Macleod*, for example, the defendant was charged with both rape and object rape, and we held that a text message sent by the alleged victim stating that the defendant "just tried to have sex with [her]" supported her account that the defendant "made some sort of unwanted sexual advance—which could include the alleged rape *and* object rape." 2024 UT App 32, ¶ 52, 546 P.3d 366 (emphasis added), *cert. denied*, 558 P.3d 87 (Utah 2024). Other cases have recognized similar dynamics. *See, e.g.*, *State v. Simpson*, 2025 UT App 32, ¶ 17, 566 P.3d 756 (discussing the admissibility of a prior act that was admitted to show the defendant's "motive, intent, plan, absence of mistake, or lack of accident" for the charged offenses of rape *and* object rape); *State v. Bradley*, 2002 UT App 348, ¶¶ 25, 27, 57 P.3d 1139 (concluding that evidence of prior sexual abuse with a different victim was "admissible for the proper, non-character purpose of showing intent under rule 404(b)" and noting that the testimony was relevant "to demonstrate an intent similar to that of the charged *offenses*" (i.e., multiple counts of aggravated sexual abuse of a child and multiple counts of sodomy on a child) (emphasis added)).

¶29 Mclain points to no authority holding that it would have been impermissible for the jury to use Daughter's testimony about the prior incidents as evidence of his intent relating to Count 5. And more to the point of this argument, the specific instruction that he now focuses on didn't expressly prohibit the jury from doing so. Thus, we're not persuaded that it should have been obvious to the district court that because of this instruction, the jury could not draw this link—and, thus, that a directed verdict was required on Count 5.

¶30 Second, Mclain also claims that, even if the instructions themselves allowed the jury to consider the prior rapes as support for his intent with respect to the attempted rape, it should still have been obvious to the district court that such a use would be prohibited under rule 404(b) of the Utah Rules of Evidence.

¶31 As an initial matter with respect to this contention, Mclain points out that the State did not provide pretrial notice under rule 404(b) of its intent to use this evidence in this manner. But as Mclain acknowledges, rule 404(b) requires notice "[o]n request by a defendant," Utah R. Evid. 404(b)(2), and there was no such request in this case.

¶32 This leaves the substance of this argument. We note here that Mclain did not object under rule 404(b) when Daughter expressly linked the various incidents, nor did he object to the State's closing argument that drew a similar link. We also note that, on appeal, Mclain points to no authority holding that when a defendant is charged with committing multiple acts of sexual abuse against the same victim, rule 404(b) prohibits the State from using those acts to establish a pattern of conduct. And we further note that there is at least some authority suggesting that this can be permissible. *See State v. Reed*, 2000 UT 68, ¶ 26, 8 P.3d 1025 ("In cases of child abuse, including child sexual abuse, evidence of specific instances of the defendant's treatment of the child is relevant to establish not merely a general disposition for violence or ill-will towards all children, but to establish a specific pattern of behavior by the defendant toward one particular child, the victim." (quotation simplified)); *State v. Klenz*, 2018 UT App 201, ¶ 45, 437 P.3d 504 ("Utah case law recognizes that one such proper noncharacter purpose is demonstrating an ongoing behavior pattern which includes the defendant's abuse of the victim." (quotation simplified)).

¶33 We recognize that Mclain was representing himself, and we further recognize that we're now reversing his conviction

based on the court's failure to ensure that Mclain had knowingly and voluntarily waived his right to counsel. But even so, with respect to this issue, we're being asked to review the result of this trial for plain error, which means that we're reviewing the trial that actually occurred to see if it should have been obvious to the district court during those proceedings that there was some error that the court needed to correct sua sponte. Here, there was no rule 404(b) objection before or during trial, and there's at least some authority suggesting that evidence of this sort could be used in the very manner that the State used it. Thus, on the record that was before the court, we don't believe that it would have been obvious that the State's use of this evidence was impermissible.

¶34 With this additional evidence added into the mix, there was more than enough evidence to submit the attempted rape of a child charge to the jury. Again, Daughter testified that Mclain "came in" to her bedroom, "shut the door," and "got on top of" her, and she further testified that she had to fight him off. She also testified that it appeared to her in real time that Mclain was trying to have sexual intercourse with her "again," meaning that his actions and demeanor seemed similar to her to his actions and demeanor on the prior occasions in which he had allegedly had sexual intercourse with her. As presented to the jury, this testimony would provide additional support for the conclusion that when Mclain got on top of Daughter in her bedroom with enough aggression that she had to fight him off, he was indeed trying to have sexual intercourse with her "again," which could reasonably support both the substantial step and intent elements of the charged offense.

¶35 Thus, viewing all of the evidence in the light most favorable to the State, we conclude that there was at least some evidence from which a jury could conclude that Mclain had committed attempted rape of a child. Or, at least, we see no basis for concluding that it should have been obvious to the district court that there was not. For these reasons, we conclude that

Mclain has not proven that the court plainly erred by not ordering a directed verdict sua sponte.

CONCLUSION

¶36   We conclude that Mclain did not knowingly and intelligently waive his right to counsel, so we reverse his convictions and remand for further proceedings. We also conclude that the district court did not plainly err by failing to issue a directed verdict on the attempted rape of a child charge; as a result, double jeopardy does not bar retrial on this charge on remand.

————